UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH RUSSELL,                          Case No. 07-14878

           Plaintiff,                Marianne O. Battani
v.                                         United States District Judge

COMMISSIONER OF                            Michael Hluchaniuk
SOCIAL SECURITY,                           United States Magistrate Judge

           Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 21)

**I.**    **PROCEDURAL HISTORY**

      A.    Proceedings in this Court

On November 13, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Marianne O. Battani  referred this matter to Magistrate Judge R. Steven Whalen

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claim for a period of Supplemental Security Income Benefits. (Dkt. 3).  This

matter was reassigned to the undersigned on January 15, 2008. (Dkt. 8).  This

matter is currently before the Court on cross-motions for summary judgment. (Dkt. 14, 21).

B.   Administrative Proceedings

Plaintiff filed the instant claims on February 2, 2002, alleging that she became unable to work on October 16, 2001. (Tr. at 63-68). The claim was initially disapproved by the Commissioner on October 24, 2002. (Tr. at 48-52). Plaintiff requested a hearing and on May 6, 2004, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Lawrence E. Blatnik, who considered the case *de novo*. In a decision by the Appeals Council dated June 4, 2004, the ALJ found that plaintiff was not disabled. (Tr. at 40-47). Plaintiff requested a review of this decision on July 29, 2004. (Tr. at 226-228). On October 14, 2004, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. On June 8, 2005, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Patricia Hartman. In a decision by the Appeals Council dated March 21, 2006, the ALJ found that plaintiff was not disabled. (Tr. at 23-33). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 21, 2006, denied plaintiff's request for review. (Tr. at 20-33); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED IN PART**, that defendant's motion for summary judgment be **DENIED**, and that this matter be remanded for further findings.

## II.    STATEMENT OF FACTS

### A.    ALJ Findings

Plaintiff was 44 years of age at the time of the most recent administrative hearing.  (Tr. at 433).  Plaintiff's relevant work history included approximately 12 years as a cashier, door greeter, and caretaker.  (Tr. at 24).  In denying plaintiff's claims, defendant Commissioner considered left ankle and left shoulder pain, depression, and diabetes as possible bases of disability.  *Id.*

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of plaintiff's disability.  (Tr. at 32).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  (Tr. at 27).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform her

previous work.  (Tr. at 32).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of sedentary jobs available in the national economy.  (Tr. at 31-32).

On May 6, 2004, a hearing was held with Administrative Law Judge Lawrence Blatnik.  (Tr. at 23).  On June 4, 2004, an unfavorable decision was rendered.  (Tr. at 23).  On July 29, 2004, plaintiff filed a request for review of hearing decision.  (Tr. at 23).  On October 14, 2004, the Appeals Council remanded the case to an Administrative Law Judge because the most current medical information in the record was dated two years before the decision.  (Tr. at 230).  The remand order directed the ALJ to, as appropriate, obtain updated medical records, contact medical sources, obtain consultative examinations, and obtain evidence from a medical expert to clarify the nature and severity of plaintiff's impairments.  (Tr. at 230-231).

B.    Parties' Arguments

1.    Plaintiff's claims of error

Plaintiff argues that there is no evidence in this record that the claimant lacked credibility. She further points out that the hypothetical asked of the VE did not fairly summarize the medical evidence in this case, and when the VE was asked to assume credibility, the VE testified that plaintiff was totally disabled.

(Dkt. 14).  Plaintiff argues that the hypothetical questions asked of the vocational expert, assume the claimant can walk or stand two hours in an eight hour day. They also assume by the question that this claimant has the concentration and persistence of pace to put in an eight hour day.  According to plaintiff, the transcript is replete with information discussing this claimant's chronic pain and her inability to stay awake during the day, and she suffers from constant chronic pain with daily swelling of her leg, requiring elevation of her leg.

Plaintiff also argues that the ALJ's decision is silent on why she failed to give credibility to an expert witness, Harold Bilotta.  Plaintiff acknowledges that a mere GAF number of 49 is not sufficient to determine disability, however, plaintiff argues that the ALJ failed to give any rationale for discounting the expert opinion given by the SSA's own evaluator, Mr. Bilotta.

The ALJ wrote in her decision that the GAF of 48 was an arbitrary number, because plaintiff was alert, oriented to time and place, and not psychotic.  Plaintiff argues that many unemployable people would satisfy this test.  Plaintiff also argues that the ALJ's conclusions regarding plaintiff's activities and lifestyle are not supported by the record.  Plaintiff points to the testimony of plaintiff and her mother, which shows that plaintiff is unable to take care of herself, let alone provide total care for her husband.  Plaintiff argues that the ALJ ignored the

evidence that plaintiff's mother does many tasks for her and instead focused on plaintiff's limited activities of doing some cooking, grocery shopping using an electric scooter, and occasionally going out to eat.

Plaintiff asserts that the ALJ improperly concluded that there was no evidence of plaintiff's impaired concentration, memory or interpersonal skills to perform routine tasks. Rather, according to plaintiff, the evidence is overwhelming based on the testimony from plaintiff and her mother that she is unable to take care of herself and her husband and required her mother's assistance in the home. According to plaintiff, more weight should be given to Mr. Bilotta's opinions because he examined plaintiff twice and both of his reports show a severely disabled claimant. Mr. Bilotta's GAF scores were well-supported by his comments and observations of plaintiff, such as flat affect, dysphoric mood, frightened, and anxious.

2.    Commissioner's counter-motion for summary judgment

According to the Commissioner, after surveying the record thoroughly and considering plaintiff's complaints, the ALJ arrived at a detailed and restrictive RFC finding that accommodated all of plaintiff's impairments. (Dkt. 21). In reaching her RFC finding, the ALJ noted that she had fully considered the opinions of State Agency medical consultants who had reviewed plaintiff's claim

and that she concurred with those experts' overall conclusions.  (Dkt. 21, citing, Tr. at 28).  With respect to plaintiff's physical limitations, she was found capable of performing tasks that are consistent with a limited range of sedentary work. (Dkt. 21, citing, Tr. at 196-203).  With respect to her mental functioning, she was found to have moderate limitations in only two of twenty listed areas of mental functioning (ability to carry out detailed instructions and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms).  (Dkt. 21, citing, Tr. at 214-15), and the reviewing consultant concluded that, considering her mental impairments, she was nevertheless able to perform unskilled work.  (Tr. 216).  According to the Commissioner, this evidence constitutes substantial evidence in support of the ALJ's decision regarding plaintiff's RFC.

Further, the Commissioner argues that in challenging the ALJ's decision, plaintiff does not point to any significant evidence to undermine the detailed restrictions identified by the ALJ.  According to the Commissioner, the substantial evidence supports the ALJ's credibility findings.  The ALJ pointed to evidence in the record that contradicted certain allegations made by plaintiff.  She noted, for example, that while plaintiff claimed that she could sit for no more than half an hour, she had told consultative examiner Dr. Lazzara, in January 2005, that she

had no problems at all with sitting.  (Dkt. 21, citing, Tr. at 280).  Plaintiff testified

that she had problems with concentration and memory, yet Dr. Lazzara observed

that her concentration was normal, and that her immediate, recent, and remote

memory were intact.  (Dkt. 21, citing, Tr. at 280-281).  The ALJ noted several

other contradictions between plaintiff's testimony and statements that she had

made to Dr. Lazzara.  (Dkt. 21, citing, Tr. at 28).  The Commissioner also points to

the ALJ's reliance on plaintiff's relatively normal examination findings during

both physical and mental consultative examinations, the fact that plaintiff was not

taking pain medications or psychotropic medications, and evidence that she had

not been fully compliant with the medications that she did take, as supporting the

ALJ's credibility finding.  (Dkt. 21, citing, Tr. at 29).  The Commissioner also

argues that there is no authority for concluding that the ALJ was required in some

way to defer to Mr. Bilotta's opinion as reflected in a numerical GAF score.  The

ALJ pointed out that, to the extent that a GAF score of 49 could be deemed to

imply work preclusive limitations, such a conclusion was inconsistent with the

record as a whole.  (Dkt. 21, citing, Tr. at 29-30).  In summary, the Commissioner

argues that the ALJ's finding that plaintiff could perform a significant number of

jobs in the economy was supported by substantial evidence of record, given the

validity of the hypothetical questions posed to the VE and the VE's identification

of a significant number of jobs that a person with plaintiff's RFC could perform. (Dkt. 21, citing, Tr. at 32-33).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (*en banc*).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545.

Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234,

241 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir.

2003) "The substantial evidence standard presupposes that there is a 'zone of

choice' within which the [Commissioner] may proceed without interference from

the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations

omitted), citing, *Mullen*, 800 F.2d at 545.

Report and Recommendation
Cross-Motions for Summary Judgment
*Russell v. Comm'r*; No. 07-14878

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

#### 1.   Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

   The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

Report and Recommendation
Cross-Motions for Summary Judgment
*Russell v. Comm'r*; No. 07-14878

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.   Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of sedentary work.  (Tr. at 31).

> Sedentary work involves lifting no more than 10 pounds
> at a time and occasionally lifting and carrying articles
> like docket files, ledgers, and small tools.  Although a
> sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often
> necessary in carrying out job duties.  Jobs are sedentary
> if walking and standing are required occasionally and
> other sedentary criteria are met.

20 C.F.R. 404.1567(a) (1991).  Social Security Ruling (SSR) 83-10 clarifies this

definition and provides that:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of
> exertion, periods of standing or walking should generally
> total no more than about 2 hours of an 8-hour workday,
> and sitting should generally total approximately 6 hours
> of an 8-hour workday.  Work processes in specific jobs
> will dictate how often and how long a person will need
> to be on his or her feet to obtain or return small articles.

20 C.F.R. § 404.1567(b).

    1.      Credibility and plaintiff's physical impairments

The residual functional capacity circumscribes "the claimant's residual

abilities or what a claimant can do, not what maladies a claimant suffers from-

though the maladies will certainly inform the ALJ's conclusion about the

claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.

2002).  "A claimant's severe impairment may or may not affect his or her

functional capacity to do work.  One does not necessarily establish the other."
*Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The
regulations recognize that individuals who have the same severe impairment may
have different [residual functional capacities] depending on their other
impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217
Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Not all impairments
deemed "severe" in step two must be included in the hypothetical.  *Griffeth*, 217
Fed.Appx. at 429.  "The rule that a hypothetical question must incorporate all of
the claimant's physical and mental limitations does not divest the ALJ of his or her
obligation to assess credibility and determine the facts."  *Redfield v. Comm'r of
Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005).  The ALJ  is only required
to incorporate the limitations that he finds credible.  *Casey*, 987 F.2d at 1235.
This obligation to assess credibility extends to the claimant's subjective
complaints such that the ALJ "can present a hypothetical to the VE on the basis of
his own assessment if he reasonably deems the claimant's testimony to be
inaccurate."  *Jones*, 336 F.3d at 476.

"It is of course for the ALJ, and not the reviewing court, to evaluate the
credibility of witnesses, including that of the claimant."  *Rogers*, 486 F.3d at 247;
*Jones*, 336 F.3d at 475 (an "ALJ is not required to accept a claimant's subjective

Report and Recommendation
Cross-Motions for Summary Judgment
*Russell v. Comm'r*; No. 07-14878

complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, an ALJ's credibility findings must be grounded in the record evidence:

the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. * * * ***The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision***.

SSR 96-7p, emphasis added.  As discussed in detail below, the undersigned suggests that the ALJ's credibility findings regarding plaintiff's physical limitations are not grounded the record and therefore, are not supported by substantial evidence.

The ALJ found plaintiff's testimony to be not entirely credible for several reasons, all of which appear to be based on purported inconsistencies with other record evidence, rather than on the witness's demeanor at the hearing.  The first reason was that while plaintiff testified that she can only sit for up to 30 minutes, on January 18, 2005, she reported to Dr. Lazzara that she had no problems sitting. The undersigned concludes that the ALJ's decision regarding plaintiff's ability to sit was supported by the substantial evidence in the record.  Plaintiff reported that she had no trouble sitting on multiple occasions, although she did report at the first

hearing that sitting was not the problem; rather, she had difficulty with "hobbling" after sitting.  (Tr. at 175 - Dr. Lazarra's August 20, 2002 report; Tr. at 280 - Dr. Lazarra's January, 2005 report; Tr. at 399).  However, the ALJ did not consider plaintiff's need for an assistive device while walking further than 50 feet in a work environment, based on her risk of falling, as repeatedly reported by Dr. Lazarra. (Tr. at 197, 198, 201, 202).  "Sedentary" work often requires lifting and carrying articles like docket files, ledgers, and small tools.  The ALJ failed to assess whether or how the undisputed requirement for plaintiff to use an assistive device to walk more than 50 feet to prevent her from falling, would affect her ability to work a sedentary job generally or whether those jobs identified by the vocational expert accommodated such a restriction.

Second, the ALJ found plaintiff's testimony regarding how long she could stand to be not credible because she told Dr. Lazarra she could stand for 30 minutes.  (Tr. at 198).  The ALJ fails to note, however, that she reported to Dr. Lazarra that she could only stand for 30 minutes, if she shifted her weight.  *Id*. Plaintiff's testimony at the hearings is not inconsistent, given that it is unclear whether plaintiff merely meant that she had to shift her weight after 5-10 minutes or whether she was testifying that 5-10 minutes was the *maximum* amount of time she could stand at all in one place:

> Q And how about just standing in one place?  How long
> can you do that?
> A I have to shift.  I can't stand too long on that.  If at like
> a counter waiting for somebody to wait on me...I'll have
> to shift like this and just barely...
> Q So, only five, 10 minutes?
> A Yeah. Yes, sir.

(Tr. at 399; 2004 hearing).  At the 2005 hearing, plaintiff testified that if she

stands longer than 5-10 minutes, then she would have to put her leg up afterward

because of the swelling.  (Tr. at 439).  Given the lack of clarity in the statement in

Dr. Lazzara's report on which the ALJ relies and extensive and uncontroverted

evidence regarding plaintiff's chronic ankle swelling, the undersigned suggests

that there is not substantial evidence to support the ALJ's finding that plaintiff's

testimony was incredible.

The ALJ also found plaintiff's testimony regarding her physical limitations

not credible because, while she testified that she could not do lawn care, she

reported earlier that she did lawn care and laundry weekly.  (Tr. at 28).  In June

2002, plaintiff reported that she did "lawn care" on a weekly basis.  (Tr. at 95).  At

the 2004 hearing, plaintiff testified that she used to mow the lawn, but because the

brake was on the left side, she has not been able to do it since the ankle injury.

(Tr. at 405-406; *see also* 2005 hearing, Tr. at 444).  The undersigned suggests that

the ALJ did not ask plaintiff at either hearing whether she did any kind of "lawn

care," but limited the question to "mowing."  The undersigned does not find the ALJ's conclusion to be grounded in substantial evidence, given that the form relied on by the ALJ inquired about general "lawn care" and plaintiff's testimony at both hearings related specifically to "mowing the lawn."

        2.        Credibility and plaintiff's mental impairment.

The undersigned also suggests that the ALJ's credibility determination and findings as to plaintiff's mental impairment are not grounded in the record and are not supported by substantial evidence.  As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the

case review and any applicable residual functional
capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the

completion of "a standard document outlining the steps of this procedure." 20

C.F.R. § 404. 1520a(d). The regulation further requires the standard document to

be completed and signed by a medical consultant at the initial and reconsideration

levels, but provides other options at the administrative law judge hearing level. *Id.*

Under this procedure, the Commissioner must first make clinical findings, as to

whether the claimant has a medically determinable mental disorder specified in

one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of*

*Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt.

404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder;

that is, its impact on the applicant's ability to work. "This is assessed in terms of a

prescribed list of functional restrictions associated with mental disorders."

*Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first

area of functional restriction is "activities of daily living." This area requires the

Commissioner to determine the claimant's ability to clean, shop, cook, take public

transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the

second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id*. The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id*. The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id*.

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: None, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Soc. Sec.*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: None, one or two, three, four or more. *Id.* "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(d)(1). If the first two functional areas receive ratings of "none" or

"slight," the third a rating of "never" or "seldom," and the fourth a rating of

"never," the Commissioner will conclude that the mental impairment is not severe,

and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10,

citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the

Commissioner must decide whether it meets or equals a listed mental disorder.

*Merkel*, at *10, citing, 20 C.F.R. § 1520a(c)(2).  The Commissioner will determine

that the claimant is disabled if the mental impairment is a listed mental disorder

and at least two of the criteria have been met.  *Merkel*, at *10, citing, 20 C.F.R. Pt.

404, Subpt. P, App. 1, § 12.02, *et. seq*.  If the severe mental impairment does not

meet a listed mental disorder, the Commissioner must perform a residual

functional capacity assessment to determine whether the claimant can perform

some jobs notwithstanding his mental impairment.  *Merkel*, at *10, citing, 20

C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The findings of a psychologist are

relevant in establishing the existence and severity of a mental impairment, and a

psychologist's evaluation of the disabling nature of a mental impairment need not

be given less weight than that of a psychiatrist.  *Crum v. Sullivan*, 921 F.2d 642

(6th Cir. 1990).

"When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary is required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly." *Zuckschwerdt v. Comm'r of Soc. Sec.*, 2008 WL 795772, *6 (E.D. Mich. 2008), quoting, *Andrade v. Sec'y of Health and Human Serv.*, 985 F.2d 1045, 1048 (10th Cir. 1993) (internal citations omitted). The PRT required by 20 C.F.R. § 404.1520a "is not only used to determine severity but also to determine the 'functional consequences of the mental disorder(s) relevant to the complainant's ability to work.'" *Zuckschwerdt*, at *7, quoting, *Witt v. Barnhart*, 446 F.Supp.2d 886, 898 (N.D. Ill. 2006). "[I]t is worth noting that one of the stated purposes for the special technique is to help the Social Security Administration organize and present its findings in a clear, concise, and consistent manner." *Zuckschwerdt*, at *7, quoting, *Selassie v. Barnhart*, 203 Fed.Appx. 174, 176 (9th Cir. 2006) (internal citations omitted). "The specific documentation requirements ... are not mere technicalities that can be ignored as long as the ALJ reaches the same result than it would have if it had followed those requirements." *Zuckschwerdt*, at *7, quoting, *Selassie*, 203 Fed.Appx. at 176. The PRT document must be completed at the "initial, reconsideration, administrative law judge hearing, and Appeals Council levels."

*Carr v. Apfel*, 1999 WL 1489892, *6 (N.D. Ohio 1999), quoting, 20 C.F.R. § 404.1520a(d).  At the initial and reconsideration levels, the document must be completed and signed by a medical consultant.  *Carr*, at *6, citing, § 404.1520a(d)(1).  The ALJ may complete the document with or without the assistance of a medical advisor.  *Carr*, at *6, citing, § 404.1520a(d)(1)(i).

In this case, the only PRT in the record is the 2002 PRT, apparently in conjunction with the initial denial.  Despite going through two appeals and the previous remand by the Appeals Council, no PRT was apparently ever performed again.  Just as in *Carr*, the "ALJ failed entirely to complete a PRT form, obtain assistance from a medical advisor, or append the form to his decision as required by the Social Security Regulations."  *Id*.

Based on the foregoing, the undersigned suggests that the ALJ's failure to consider the nature and degree of plaintiff's mental limitations allows for the possibility that the residual functional capacity analysis does not fully account for her deficiencies.  While this record may not justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), a remand is nonetheless required for an analysis of plaintiff's mental limitations as required by 20 C.F.R. § 404.1520a, as well as for the general principle that an ALJ "must

articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Comm'r of Soc. Sec.,* *2003 WL 236419, *5 (6th Cir. 2003)*.  Moreover, where the Commissioner has not followed its own rules, the case should be remanded even if evidence in the record might otherwise support the decision of the Commissioner.  *Wilson*, 378 F.3d at 546.

Given this recommendation, the undersigned also suggests that the ALJ reassess her credibility determinations as it relates to plaintiff's mental limitations. As set forth in SSR 96-5p, a "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id*.  The ALJ found plaintiff's reported mental impairments not entirely credible because, while plaintiff testified that she has concentration problems, Dr. Lazzara noted plaintiff had intact immediate, recent and remote memory with normal concentration; and while plaintiff reported that she had problems sleeping five out of seven days, she told Mr. Bilotta she slept well.  (Tr. at 28).  The record is replete with a variety of statements from plaintiff over the course of several years regarding her sleep ranging from sleeping well, sleeping

okay, to having disturbed sleep.  In May 2000 plaintiff reported occasionally disturbed sleep.  (Tr. at 276).  In June 2000, plaintiff reported sleeping well.  (Tr. at 271).  In June 2001, plaintiff report to her physician that she had sleeping difficulties.  (Tr. at 254).  In June 2002, plaintiff reported some difficulty sleeping due to pain at night.  (Tr. at 94).  In August 2002, she told Mr. Bilotta "I sleep good."  (Tr. at 171).  In February 2005, plaintiff reported to Mr. Bilotta "I sleep okay."  (Tr. at 291).  In June 2005, plaintiff reported sleep disturbances to Dr. Jerome.  (Tr. at 331).  The undersigned is not persuaded that plucking a single statement to a mental health profession regarding the status of plaintiff's sleep in *2002* renders her testimony regarding her sleep disturbances in *2005* to be incredible.

The ALJ also wrote that she fully considered the assessments at the state agency level, including a Physical Residual Functional Capacity Assessment, Mental Residual Functional Capacity Assessment, a DDS Consultation Form, a Physical Residual Functional Capacity Assessment and a Psychiatric Review Technique Form, in which the claimant was found capable of sedentary work with limitations, and agreed with the "overall conclusion in these assessments that the claimant is not disabled."  (Tr. at 28).  It is evident, however, that the ALJ relied primarily on statements from Dr. Lazarra (who is not a mental health professional

and did not perform a mental status examination) and plaintiff's 2002 PRT (Tr. at 182-195), which did not include a personal examination of plaintiff.  As noted by the Appeals Council on the first remand, plaintiff's medical records through were incomplete and provided an insufficient basis for the ALJ to make a disability determination.  Two mental examinations were performed in 2005, one which the ALJ did not accept (Mr. Bilotta) and the other of which the ALJ failed to discuss (Dr. Jerome).  Dr. Jerome, a pain specialist, noted that plaintiff was distressed and depressed, has emotional problems over her inability to work.  Dr. Jerome notes, "she continues to believe she will find work. I think the prospects are fairly dim when looking at the mental health side."  (Tr. at 330-331).  Dr. Jerome wrote that plaintiff was not in control of her emotions, cries easily, she is upset, depressed, bitter, desperate, withdrawn, does not feel she is pulling her weight, has diminished activities of daily living, is increasing weight, is having a difficult time keeping her diabetes under control, is always worrying, feeling guilty worthless, unproductive, is overweight with an inadequate personality and low self esteem. (Tr. at 331).  He also noted that she forgets easily and is scared of the fact that she is forgetting and is "very tangential with loose associations."  Dr. Jerome observed that plaintiff's speech was halted, her appearance disheveled, and that she was anxious, apprehensive, physically tense and nervous and did not want to be

29

considered disabled.  He concluded that she fits under the C-avoidant personality disorder, that there was a pervasive pattern of social inhibition, feelings of inadequacy, and hypersensitivity.  (Tr. at 332-333).  Dr. Jerome's evaluation is consistent with plaintiff's testimony and Mr. Bilotta's assessment and the ALJ provided no analysis as to why it was rejected.  While an ALJ does not need to mention every piece of evidence of in the record, given the Appeals Council's remand order that the record was previously insufficient, it was critical for the ALJ to consider this mental evaluation.

The ALJ observed that plaintiff was not receiving any therapy or taking any psychotropic medication, which the ALJ wrote may indicate that plaintiff's depression is not disabling.  The ALJ also observed that plaintiff had not been fully compliant with her other medications.  (Tr. at 29).  Moreover, there is evidence in the record to support that plaintiff was taking psychotropic medications.  The ALJ did not ask plaintiff whether or why she stopped taking this medication.  (Tr. at 25, 169).  Moreover, the failure to seek treatment for a period of time may be a factor to be considered against a claimant, *Hale v. Sec'y of Health and Hum. Serv.*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy her condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990).  The record is replete

30

with evidence that plaintiff stopped seeking medical treatment of any kind because she could not afford treatment.  (Tr. at 280, 283, 402).  Plaintiff has no income other than her husband's disability incomes, which is less than $800 per month. (Tr. at 64, 434).  "The Sixth Circuit has noted that it is poor practice to chastise an individual with a mental impairment for lack of diligence in seeking treatment." *Blankenship v. Astrue*, 2008 WL 3833646, *5 (E.D. Ky. 2008), citing, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  The undersigned suggests that there is no record evidence to support the ALJ's conclusion that plaintiff's failure to seek mental health treatment should weigh against her.

Based on these judgments, the undersigned cannot conclude that the ALJ's credibility determination as to plaintiff's mental limitations is grounded in substantial evidence.

3.      Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, does not fall within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as it is not supported by substantial evidence.

Report and Recommendation
Cross-Motions for Summary Judgment
*Russell v. Comm'r*; No. 07-14878

## IV.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED IN PART**, that defendant's motion for summary judgment be **DENIED**, and that this matter be remanded for further findings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response must not exceed 20 pages in

Report and Recommendation
Cross-Motions for Summary Judgment
*Russell v. Comm'r*; No. 07-14878

length unless such page limit is extended by the Court.  The response must address

specifically, and in the same order raised, each issue contained within the

objections by motion and order.  If the Court determines any objections are

without merit, it may rule without awaiting the response to the objections.

Date: February 12, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 12, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Derri T. Thomas, AUSA, Ronald M. Bahrie, and Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant