**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEBORAH K. RUSSELL n/k/a
KEITH,

       Plaintiff,                            CASE NO. 07-14878
v.                                   HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**OPINION AND ORDER OF THE COURT REJECTING REPORT AND RECOMMENDATION, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Deborah Russell brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of the Commissioner denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The case was referred to Magistrate Judge Michael Hluchaniuk pursuant to 28 U.S.C. § 636(b)(1)(B).

      The parties filed dispositive motions, and in his Report and Recommendation (R&R), the Magistrate Judge recommended that the Plaintiff's Motion for Summary Judgment be granted in part and that the Defendant's Motion for Summary Judgment be denied, and that this matter be remanded for further findings.

      Defendant timely filed objections to the R&R,[1] and Plaintiff filed a Brief in Agreement with Magistrate Judge's R&R. For the reasons stated below, the Court REJECTS the

---

[1] Plaintiff submitted an Objection to Defendant's Objections to the Magistrate Judge's R&R, asserting that the pleading was untimely. Rule 6(a), FED. R. CIV. P., governs the calculation of time, and contrary to Plaintiff's assertion, Defendant's Objection was filed within the time period specified in the R&R.

Magistrate Judge's recommendation, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment.

**I.  PROCEDURAL BACKGROUND**

Plaintiff filed her claim for SSI, on February 8, 2002, alleging disability due to diabetes, a broken left ankle, surgical repair of a tendon in her ankle, the rotary cuff in her left arm, depression, and high blood pressure.  Tr. at 83.  After Plaintiff's claim was denied, she requested a hearing.  Administrative Law Judge Lawrence E. Blatnik presided over the May 6, 2004, hearing.  He issued an unfavorable decision, which the Appeals Council vacated on October 14, 2004.  The Appeals Council remanded the matter for further proceedings.

On June 8, 2005, Plaintiff, her mother, and a vocational expert testified at a second hearing.  In a decision dated March 21, 2006, Administrative Law Judge Patricia Hartman (hereinafter the "ALJ") issued her decision, finding that Russell was not disabled.  Specifically, the ALJ determined that Russell possessed the residual functional capacity to return to a limited range of sedentary work.  Tr. at 31.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 14, 2007, and the decision became the final decision of the Commissioner.  Plaintiff timely filed this action for judicial review of the Commissioner's decision.

The Court incorporates the facts as articulated in the Report and Recommendation.  The Court includes any specific facts upon which it relies in analyzing the parties' arguments in its discussion of Defendant's objection.

**II. STANDARD OF REVIEW**

In cases where a magistrate judge has submitted a report and recommendation and a party has properly filed objections to it, the district court must conduct a de novo review of those parts of the report and recommendation to which the party objects. 28 U.S.C. § 636(b)(1).

Judicial review in a social security appeal is limited to determining whether there is substantial evidence supporting the administrative law judge's decision and whether the judge applied the correct legal standards in reaching that decision. Elam v. Comm's of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003); 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If substantial evidence supports a denial of benefits, that decision is not subject to reversal, even if the reviewing court determines that substantial evidence supports a contrary decision. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983).

When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight." Mullen, 800 F.2d at 545 (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1971)). However, the court may not review the evidence de novo, make determinations of credibility, or weigh the evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). Consequently, the substantial evidence standard accords "considerable latitude to administrative decision makers," as "[i]t presupposes that there is a zone of choice within which the decision makers can go either

way, without interference by the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (citations and internal quotations omitted).

With this standard in mind, the Court directs its attention to Defendant's objections to the R&R.

## III. ANALYSIS

Defendant objects to the Report and Recommendation for several reasons. First, Defendant contests the recommendation to remand for a reassessment of Plaintiff's credibility as to her physical and mental impairments. Second, Defendant challenges the recommendation to remand on the ground that ALJ failed to follow the proper procedure for evaluating Plaintiff's mental impairment. The Court finds merit to the objections, which are discussed below.

### A. Credibility Determination

In her decision, the ALJ found Plaintiff's testimony concerning the "extent and severity" of her symptoms was not entirely credible, given the variation in statements she made to doctors, the medical records, and her daily activities including meal planning and preparation, and grocery shopping. Tr. at 28. Specifically, the ALJ explained that in assessing Plaintiff's credibility she found inconsistences in Plaintiff's testimony regarding how long she could sit or stand, and the activities Plaintiff claimed she was able to do.

There is no dispute that Russell's testimony about how long she could sit was inconsistent. At the hearing, Russell testified that she could sit for up to thirty minutes. She previously had reported to her doctor on multiple occasions that she had no problems sitting.

4

In addition, the ALJ noted inconsistencies in Plaintiff's assessment as to how long she could stand. In particular, Russell told one doctor she could stand for thirty minutes if she shifted her weight, yet testified at the hearing that the maximum amount of time she could stand at all was five to ten minutes. Although there is other testimony in the record that may detract from this finding of inconsistency, the ALJ's finding falls within the latitude given to her.

Finally, the ALJ found inconsistencies in Plaintiff's testimony regarding her ability to do lawn care. In June 2002, Russell reported she did lawn care on a weekly basis. Tr. at 95. Russell subsequently testified she could no longer mow the lawn. Tr. at 305-06. The Magistrate Judge noted that mowing may be construed differently than lawn care; consequently, the testimony provides no basis for finding Plaintiff less than credible. The Court agrees. Nevertheless, the Court notes that Plaintiff's assessment of the extent of her limitations was not fully corroborated by the objective medical evidence or her own testimony about her daily activities. Therefore, the Court is not free to reject the ALJ's credibility determination.

An additional consideration relevant to the assessment of Plaintiff's physical limitations was identified by the Magistrate Judge. He noted that the ALJ's failed to consider Plaintiff's need for an assistive device while walking. Specifically, the Magistrate Judge concluded that the ALJ failed to assess "whether or how the undisputed requirement for Plaintiff to use an assistive device to walk more than 50 feet to prevent her from falling, would affect her ability to work a sedentary job generally or whether those jobs identified by the vocational expert accommodated such a restriction." R&R at 19.

The Court finds that the record does not contain substantial evidence demonstrating a need for an assistive device. Dr. Lazarra, a consultant who examined Russell on two occasions, merely opined in 2002 that Plaintiff "would benefit from the use of an assistive device for balance control, specifically when walking long distances or on uneven ground." Tr. at 178. Dr. Lazarra subsequently reported that an assistive device would be "helpful for pain control and not for balance." Tr. at 283. Plaintiff did not use an assistive device and although one was suggested by Dr. Lazarra, he never opined that one was necessary for Plaintiff. Moreover, consideration of Social Security Ruling (SSR) 96-9p supports this Court's analysis of this issue. It provides in relevant part:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 61 Fed.Reg. at 34482. Accord Howze v. Barnhart, 2002 WL 31656560, at *3 (3d Cir. 2002) (finding that "even where the medical evidence mentioned the claimant's use of a cane and a physician had indicated that the claimant needed to use a cane, such isolated notations are insufficient to support a finding that the [claimant's] cane was medically necessary"). Here, the ALJ had no need to account for use of a cane, given the restrictions identified in the hypothetical and the nature of the medical evidence suggesting Plaintiff use a cane.

6

In sum, the Court finds there is a sufficient basis to support the ALJ's assessment of Plaintiff's credibility as to her physical limitations.  Therefore, the Court turns to the objections raised relative to the ALJ's assessment of Plaintiff's mental status.

Harold Bilotta tested Plaintiff in February 2005, and diagnosed her with adjustment disorder with depressed mood. Russell's Global Assessment of Functioning (GAF) was rated at 48.  Tr. at 26.  The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function.  See American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.-Text Revision) (DSM-IV).  A score between 41 and 50 indicates "serious symptoms or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  Id.

The ALJ deemed Plaintiff's GAF score "arbitrarily low." Tr. at 29.  Her characterization was based on the other evidence in the record, including the narratives of Russell's psychological clinical interviews "which portray less serious dysfunction."  Tr. at 29-30.  Plaintiff had no episodes of decompensation and no psychiatric hospitalization. The ALJ noted that Mr. Bilotta opined that the Plaintiff suffered "slight to moderate limitations in her ability to understand, remember, and carry out instructions," and only "slight" impairment in her ability to interact appropriately with co-workers and supervisors or respond to pressure in a work setting.  Tr. at 26.  The ALJ concluded that Russell had only mild limitation in her ability to engage in daily activities and social functions.  Although Plaintiff had varying sympotomatolgy, she was typically alert, and correctly oriented.  Id. Her activities and lifestyle further undermine the import of the score.  Notably, Plaintiff took

care of her disabled husband, did the grocery shopping, drove, cooked, and went out to eat.

The ALJ additionally found that despite Plaintiff's testimony that she has concentration problems, Dr. Lazarra found she had intact immediate, recent, and remote memory with normal concentration. Id., citing Ex. 10F. He further characterized her limitation in her ability to engage in daily activities as mild.

The ALJ noted that a licensed psychologist, John Jerome, evaluated Russell in June 2005. Dr. Jerome noted that her prospects for employment were "fairly dim when looking at the mental health side." Tr. at 330-31. The Magistrate Judge noted that Dr. Jerome's evaluation was consistent with Plaintiff's testimony, and found the ALJ's decision lacking because it included no explanation as to why it was rejected. See R&R at 30. Although Defendant raised no objection to the Magistrate Judge's evaluation that it "was critical for the ALJ to consider this mental evaluation," the Court notes that generally the opinions of treating physicians are given greater weight than those of nontreating physicians. Rogers v. Commissioner, 486 F.3d 234, 242 (6th Cir. 2007). Moreover, deference turns on objective medical evidence. In this case, although Dr. Jerome administered the MMPI 2, the results are not contained in the record. The purpose of testing was to ascertain whether Russell's perception of pain included "functional or secondary gain elements." Tr. at 332. Additionally, Dr. Jerome was looking for other factors that might interfere with Plaintiff's ability to perceive pain relief. Id. The ALJ kept the record open for over three months, waiting for additional records from Dr. Jerome, but none were submitted. Tr. at 23. The ALJ is not required to discuss in detail every piece of medical evidence. Dr.

Jerome did not opine that Plaintiff was disabled.

Accordingly, the record, as a whole, supports the ALJ's finding that Plaintiff's condition is not disabling, notwithstanding Russell's testimony to the contrary. The ALJ's findings as to credibility are entitled to deference because she had the opportunity to observe the claimant and assess her subjective complaints. Brainard, 889 F.2d at 681. Her determination in this case is supported by the medical records, and Plaintiff's own testimony about her daily activities. Because this Court finds that the ALJ's credibility determination was grounded in the record, it is beyond the Court's purview to reweigh the evidence.

### 2. Compliance with Regulations

In addition to questioning the credibility determinations, the Magistrate Judge recommends this matter be remanded because the ALJ did not complete a Psychiatric Review Technique Form (PRTF) and attach it to her decision. The Magistrate Judge noted that the only PRTF in the record was completed in 2002.

The regulations previously required that the PRTF must be completed at the initial, reconsideration, administrative law judge hearing, and Appeals council levels; however, the regulations no longer require it. Under 20 C.F.R. § 404.1520a, which governs the evaluation of mental impairment, an ALJ is no longer required to complete the form, but must include "pertinent findings and conclusion based on the technique" in the decision. See 20 C.F.R. § 416.920a(c). The ALJ did so in the narrative portion of her decision. See Tr. at 29-30.

9

## IV. CONCLUSION

Therefore, the record supports the ALJ's assessment of Plaintiff's residual capacity to perform sedentary work with limitations. No basis for reversing the decision of the ALJ exists.

Accordingly, the Court **REJECTS** the Magistrate Judge's recommendation and **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment**.**

**IT IS SO ORDERED.**

                                     s/Marianne O. Battani
                                     HON. MARIANNE O. BATTANI
                                     UNITED STATES DISTRICT JUDGE

DATE: March 30, 2009

### CERTIFICATE OF SERVICE

Copies of this Opinion and Order were mailed to counsel of record on this date by e-filing and/or ordinary mail.

                                     s/Bernadette M. Thebolt
                                     Case Manager